UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDOIL BROWN,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 13-cv-04588-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 13, 16 |

Plaintiff Rudoil Brown moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Brown not disabled and therefore denied his application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* The Commissioner cross-moves to affirm. For the reasons stated below, the court grants in part and denies in part Plaintiff's motion and grants in part and denies in part the Commissioner's motion, and remands the action for further proceedings consistent with this order.

**I. Procedural History**

Plaintiff filed an application for Social Security Disability Insurance (SSDI) benefits on May 19, 2010 (A.R. 147-48), which was initially denied on November 12, 2010 (A.R. 59-63) and again on reconsideration on March 11, 2011 (A.R. 67-73). On August 18, 2011, Plaintiff filed a request for a hearing before an Administrative Law Judge (ALJ). (A.R. 74-76.) After the May 8, 2012 hearing, ALJ Caroline H. Beers issued a decision finding Plaintiff not disabled. (A.R. 12-22.) The ALJ determined that Plaintiff is HIV-positive and suffers from depression, hepatitis, anxiety, asthma, and hypertension, which are severe impairments. (A.R. 14.) Although the ALJ determined that Plaintiff is unable to perform his past work, she found that Plaintiff has the

following residual functional capacity (RFC) to perform "medium work":

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that he can perform simple tasks consistent with Specific Vocational Preparation (SVP) 2 entry level work, as defined in the Dictionary of Occupational Titles (DOT); can make simple work-related decisions with occasional workplace changes; can maintain occasional interaction with coworkers and the public; should avoid concentrated exposure to dusts, fumes, gases, odors, chemicals and poor ventilation; no work around food service or preparation.

(A.R. 16.) Relying on the opinion of a vocational expert (VE) who testified that an individual with such an RFC could perform a significant number of jobs existing in the economy, the ALJ concluded that Plaintiff is not disabled. (A.R. 21-22.)

Plaintiff filed a request for review of the hearing on July 13, 2012 (A.R. 7-8), which the Appeals Council denied on August 9, 2013. (A.R. 1-6.) The ALJ's decision therefore became the final decision of the Commissioner. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Plaintiff then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II. The Five-Step Sequential Evaluation Process

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

1. At the first step, the ALJ considers the claimant's work activity, if any. If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2. At the second step, the ALJ considers the medical severity of the claimant's

impairment(s). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled.

3. At the third step, the ALJ also considers the medical severity of the claimant's impairment(s). If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled.

4. At the fourth step, the ALJ considers an assessment of the claimant's residual functional capacity ("RFC") and the claimant's past relevant work. If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled.

5. At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.

20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

### III. Factual Background

**A. Plaintiff's Background and Activities of Daily Living**

The record contains the following information. Plaintiff was born in 1961 and was diagnosed with HIV in 1999. (A.R. 47, 193.) He completed two years of community college. (A.R. 34-35.) Plaintiff has not worked since 2009, and the last work he performed was a part-time position as an in-home caregiver, working about four to six hours per week. (A.R. 35-36, 38.) He last worked full-time over ten years ago at the Oakland Tribune, working as a telemarketing manager. (A.R. 37.) He left that position due to cutbacks. (A.R. 37.)

At the May 2012 hearing, Plaintiff testified that he is unable to work because his "severe depression doesn't allow [him] to get up and face the day like normal or regular people do." (A.R.

3

39.) According to Plaintiff, after he learned he has HIV, his "focus, [his] concentration, attention to detail . . . everything just started going kaput." (A.R. 39.) He testified that HIV "has a lot to do with [his] depression – the fact that [his] life has totally and drastically changed, the fact that [he's] not well, the fact that there's no cure." (A.R. 48.) Plaintiff is "scared a lot of times" and is paranoid living in his new apartment. (A.R. 48.) He testified that the majority of the time, he does not like facing the day or being out in the daytime. He does not care for "new" people, instead preferring old friends. He testified that he does not like to socialize and does not like to make new friends, and stated that it is "safer in bed." (A.R. 39, 43.)

Plaintiff takes medications for his depression, but claims that most of the time they are not helpful. He experiences side effects from his medications, including sleepiness, extreme dizziness, headaches, dry mouth, and confusion. He testified that he is always fatigued and listless, and that the medications make his fatigue worse. (A.R. 40, 44.) Plaintiff testified that he does not always take his blood pressure or HIV medications because he sleeps until 1:00 or 2:00 p.m., and by the time he gets out of bed, he forgets to take them. (A.R. 42.)

Plaintiff experiences leg cramps or continuous dizziness in the morning due to his high blood pressure. (A.R. 34.) He experiences leg cramps or spasms in alternating legs about three days a week, which throws off his balance in the morning. (A.R. 40-41.) At times the spasms affect his entire side, not just his leg, and he is unable to move. He takes pain medication for the spasms, which takes about two to three hours to work. (A.R. 41.) Plaintiff also testified that he has asthma . (A.R. 41-42.)

On a typical day, he gets up at around 2:00 p.m., rubs his leg with VapoRub and takes pain medications. He then watches television while lying down. (A.R. 44.) He also listens to the radio. (A.R. 46.) He washes his face and brushes his teeth once or twice a week, depending on how he feels. (A.R. 46.) Plaintiff lives by himself but has an old friend who checks in on him about three times per week. (A.R. 44.) She checks whether he has taken his medication and eaten anything and makes his bed. (A.R. 44-45.) She also does Plaintiff's grocery shopping. Plaintiff occasionally goes to a liquor store to buy canned goods and snacks. (A.R. 45-46.) He does not do

laundry; his friend occasionally washes his things. (A.R. 46.)

**B.     Plaintiff's Relevant Medical History**

   **1.     Dr. Tim Brown**

Plaintiff has seen Tim Brown, Ph.D., a licensed psychologist, regularly since October 2009. (*See* A.R. 267-94, 418, 476-99.) On August 11, 2011, Dr. Brown wrote a letter at Plaintiff's request to document his diagnosis and treatment. Dr. Brown wrote that Plaintiff was experiencing "lack of interest in doing usual activities, feeling depressed, poor sleep, feeling tired, poor appetite, feeling worthlessness [sic], and trouble with concentration," and opined that Plaintiff's symptoms "have prevented [Plaintiff] from having the motivation and ability to work." (A.R. 418.)

   **2.     Dr. Albert Yu**

Albert Yu, M.D. is Plaintiff's treating physician, and has treated Plaintiff since July 2005. (A.R. 356.) On September 24, 2010, Dr. Yu provided a physician statement in which he stated that Plaintiff appears chronically ill and visibly fatigued, and that the cause is depression. (A.R. 356.) He opined that Plaintiff is able to lift ten pounds occasionally and less than ten pounds frequently, can stand/walk less than 2 hours, and can sit less than 6 hours, and stated that these "findings and limitations" have been present since 2009. (A.R. 356.) He described Plaintiff's functional level as follows: "still has uncontrolled depression and still needs to have meds adjusted. Can work no more than 2 hours/day with breaks in between." (A.R. 356.) Dr. Yu stated that the objective findings supporting the limitations included "limited ability in social interaction, adaption [sic], sustained concentration, and persistence." (A.R. 357.)

   **3.     Dr. D. Lucila**

In September 2010, D. Lucila, M.D., a State agency medical consultant, completed a psychiatric review technique form and a rating of functional limitations. (A.R. 337-47.) Dr. Lucila opined that Plaintiff was mildly restricted in activities of daily living, social functioning, and maintaining concentration, persistence, and pace. (A.R. 345.)

   **4.     Dr. Rose Lewis**

5

Rose Lewis, M.D., performed an internal medicine evaluation of Plaintiff on October 16, 2010. (A.R. 358-76.) In her report, she noted that he "can take care of his own personal needs," "mostly" sleeps all day, listens to the radio, and fills out paperwork, but does not do much household chores except keeping his room clean. She also noted that he walks two or three times a week for approximately one mile. (A.R. 358.) She listed the 10 medications he was currently taking. (A.R. 358-59.) She observed that Plaintiff was a "well-developed, well-nourished male who is in no acute distress," and was able to get on and off the exam table and sit comfortably without difficulty, although he appeared to be mildly short of breath after walking into the room. (A.R. 359.) In general, she found no abnormalities. (A.R. 360.) Dr. Lewis diagnosed Plaintiff as being HIV-positive, with poorly-controlled asthma and hypertension. (A.R. 361.) She opined that he had no limitations for next 12 months, and that he could lift and carry 50 pounds occasionally and 25 pounds frequently. She noted that he had mild limitations in working around chemicals, dust, fumes, and gases because of his history of asthma and his current shortness of breath. (A.R. 361.)

### 5. Dr. L. Pancho

L. Pancho, M.D., a State agency medical consultant, performed a physical residual functional capacity assessment of Plaintiff in November 2010. (A.R. 377-81.) Dr. Pancho opined that Plaintiff is able to occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk six hours in an eight hour workday, and sit with normal breaks for about six hours in an eight hour workday. (A.R. 378.) Dr. Pancho found no other functional limitations, but concluded that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. due to asthma. (A.R. 380.)

### 6. Dr. Uwe Jacobs

Uwe Jacobs, Ph.D., a State agency psychological consultant, assessed Plaintiff's mental residual functional capacity in March 2011. (A.R. 390-93; 394-407.) Dr. Jacobs opined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, and

work in coordination with or proximity to others without distraction. (A.R. 390.) Dr. Jacobs also determined that Plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. (A.R. 391.) Dr. Jacobs concluded that Plaintiff was markedly limited in his ability to interact appropriately with the general public. (A.R. 391.) Dr. Jacobs opined that Plaintiff "can understand, remember and carry out simple and some detailed but not complex instructions. [Plaintiff] can sustain [concentration, persistence, and pace] for simple tasks only. [Plaintiff] can get along with others but not work effectively with the public. [Plaintiff] can adapt to the stress and changes of a simple work environment." (A.R. 392.) He also opined that the medical evidence of record did not support an alleged "worsening" of Plaintiff's depression, and instead concluded that such evidence was consistent with moderate functional limitations. (A.R. 406.)

### 7. Dr. Ted AAmes

Ted AAmes, Ph.D., examined Plaintiff in March 2012 and performed a battery of psychological tests. In his March 8, 2012 report, he notes that Plaintiff presented with symptoms of psychosis and depression, and that he also has symptoms of personality disorders. (A.R. 501.) Dr. AAmes noted that Plaintiff reported that he currently has few friends or social supports due to his mental health problems, and that he isolates from others and has no social life. (A.R. 502.) He told Dr. AAmes, "[s]ometimes I stay in bed for three days to a week . . . [it happens] every two months." (A.R. 503.) Dr. AAmes noted that Plaintiff's mood was "depressed, angry, and anxious," and "evidenced paranoia and suspiciousness." Plaintiff reported "experiencing hallucinations in the form of hearing voices that talk about him in a pejorative manner . . . [h]e whispered to himself under his breath during the clinical interview and appeared to be responding to internal stimuli at times." Dr. AAmes concluded that "Mr. Brown has extremely poor insight and judgment." (A.R. 503.)

Dr. AAmes determined that Plaintiff was moderately impaired in the domains of

"attention/concentration/pace/persistence" and executive functioning. He assessed Plaintiff's memory as normal and language as mildly impaired, and assessed Plaintiff as severely impaired in visual/spatial abilities. (A.R. 504-505.) Dr. AAmes opined that Plaintiff was experiencing severe depression, and reported that Plaintiff stated he feels depressed "all the time." (A.R. 505.) He also reported experiencing auditory and visual hallucinations. (A.R. 506.) With respect to Plaintiff's cognitive functioning, Dr. AAmes opined that Plaintiff's "psychiatric symptoms in conjunction with his cognitive deficient interfere with his ability to make decisions, resolve problems, and effectively manage his daily affairs. He is fragile which makes him vulnerable to decompensation if demands are place upon him; this makes his ability to be successful at a job site extremely limited. . . . [h]is social alienation and psychotic thinking would make working effectively with others difficult." (A.R. 510.) According to Dr. AAmes, Plaintiff is severely impaired in the area of social functioning. (A.R. 513.) Finally, Dr. AAmes concluded that Plaintiff "could likely not sustain simple or complex tasks for up to eight hours or work a typical eight hour work day or forty hour work week," and that his problems were due to "his severe psychiatric symptoms." (A.R. 510.)

## IV. Issues Presented

1. Whether the ALJ erred in weighing the medical opinions;
2. Whether the ALJ erred in finding that Plaintiff does not meet or equal a listing; and
3. Whether the ALJ's determination of Plaintiff's RFC was supported by substantial evidence.

## V. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. The ALJ's underlying determination "will be disturbed only if it is not supported by substantial evidence or it is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation marks omitted). "Substantial evidence" is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is

8

"more than a mere scintilla" but less than a preponderance. *Id*. When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, resolving ambiguities, and drawing inferences logically flowing from the evidence. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982); *Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## VI. Discussion

### A.  The ALJ's Evaluation of the Medical Opinions

Plaintiff first argues that the ALJ erred in weighing the medical opinions. Specifically, he argues that the ALJ erred in giving no weight to the opinions of treating physicians Dr. Brown and Dr. Yu and examining physician Dr. AAmes in favor of the opinion of non-treating, non-examining physician Dr. Jacobs. He also argues that the ALJ erred in giving great weight to the opinion of examining physician Dr. Lewis.

#### 1.  Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821,

9

830 (9th Cir. 1996). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id.*

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes*, 881 F.2d at 751 (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188. If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31.

A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent

10

evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(d)(4).

**2. Analysis**

**a. Medical Opinions Regarding Plaintiff's Mental Functions**

In August 2011, Dr. Brown, Plaintiff's treating psychologist, opined that Plaintiff suffers from Major Depression, Recurrent, and concluded that the symptoms of depression "have prevented him from having the motivation and ability to work." (A.R. 418.) Dr. Yu, Plaintiff's treating physician, opined in September 2010 that due to his "uncontrolled depression," Plaintiff cannot work for more than two hours a day with breaks in between and has limited ability in social interaction, adaption [sic], sustained concentration and persistence. (A.R. 356-57.) Dr. AAmes examined Plaintiff and opined in March 2012 that Plaintiff "could likely not sustain simple or complex tasks for up to eight hours or work a typical eight hour work day or forty hour work week" due to his "severe psychiatric symptoms." (A.R. 510.)

The ALJ gave no weight to the opinions of Drs. Brown, Yu, and AAmes in favor of non-examining physician Dr. Jacobs's opinion that Plaintiff had moderate limitations, including limitations in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, but can "understand, remember, and carry out simple and some detailed but not complex instructions," and could sustain concentration, persistence, and pace for simple tasks. (A.R. 391-92.)

To the extent that Dr. Jacobs's opinion that Plaintiff was moderately limited in several areas but could perform simple tasks contradicted the opinions of Drs. Brown, Yu, and AAmes, the ALJ was required to provide "specific and legitimate" reasons supported by substantial evidence to reject their opinions. *Lester*, 81 F.3d at 830-31.

**i. Dr. Brown**

The ALJ accorded great weight to Dr. Brown's treatment notes based on the long treatment

11

relationship between Brown and Plaintiff and Dr. Brown's area of medical expertise, and because the "treatment notes provide contemporaneous descriptions of [Plaintiff's] mental issues." (A.R. 19.) However, she accorded no weight to his opinion that Plaintiff's symptoms prevent him from having the motivation and ability to work, stating that his underlying treatment notes did not support this opinion. The sole treatment note by Brown that the ALJ identified in her discussion of his opinion was a note dated June 29, 2010 in which he noted that Plaintiff had asked him to complete a form evaluating his ability to return to work. In the June 2010 note, Dr. Brown noted that Plaintiff reported his mood had improved, and that Dr. Brown told Plaintiff that he could not "fully complete the form because [Dr. Brown] [had] not evaluated his ability to complete work tasks." Dr. Brown also noted that he reminded Plaintiff that he had not taken Plaintiff "off of work, and that he left work on his own volition," and that he told Plaintiff "that I would not be stating his mental health condition prevented [him] from working at this point." (A.R. 292.) The ALJ provided no further justification for rejecting Dr. Brown's August 2011 opinion.

The court finds that the ALJ did not set forth "specific and legitimate reasons" supported by substantial evidence to reject Dr. Brown's opinion in favor of his June 2010 note. First, it appears that the ALJ interpreted the June 2010 note as a statement of Dr. Brown's opinion that Plaintiff's mental health condition *did not* prevent him from working, but this is not a fair reading given that Dr. Brown explicitly noted that he "could not fully complete the form because *I have not evaluated [Plaintiff's] ability to complete work tasks*."

Further, taken as a whole, Dr. Brown's treatment notes are not inconsistent with his August 2011 opinion, which he rendered over a year after the June 2010 note. Dr. Brown saw Plaintiff multiple times between June 2010 and August 2011 and noted Plaintiff's increased depression during that time. For example, in March 2011, Dr. Brown noted that Plaintiff reported worsening depression and related symptoms since August 2010. Plaintiff also stated that he did not feel his medication (Zoloft) was helping anymore. (A.R. 477.) One month later, Plaintiff reported that his symptoms were unchanged and that he continued to feel unmotivated and was sleeping more than 12 hours a day. (A.R. 480.) Plaintiff's symptoms remained the same in May 2011, (A.R. 483),

and in August 2011. (A.R. 486-87 (noting Plaintiff "oversleeps" until noon).) In his August 2011 opinion, Dr. Brown stated that Plaintiff's symptoms of "Major Depression, Recurrent," included "lack of interest in doing usual activities, feeling depressed, poor sleep, feeling tired, poor appetite, feeling worthlessness [sic], and trouble with concentration." (A.R. 418.) This diagnosis, as well as the resulting symptoms, were reflected in and supported by Dr. Brown's treatment notes. (*See* A.R. 269, 288, 477-78 (patient reports feelings of hopelessness), 480 (patient continues to feel unmotivated and is oversleeping), 495 (patient "still feels unable to work due to poor motivation), 497-98 (patient reports difficulty motivating himself to get out of his apartment; reports feeling more paranoid).)

Later in the opinion, the ALJ noted that the treatment notes from Kaiser consistently indicate that Plaintiff has "moderate" symptoms of depression, although she also noted that there was a several month period in which his depression appeared to be moderate to severe, and stated that his depression improves when he takes his psychotropic medications. (A.R. 20.) However, the treatment notes she cites are from 2009 or the first half of 2010, predating Dr. Brown's August 2011 opinion by over one year. (A.R. 269, 271, 274, 288, 310, 313, 316, 318, 321.) Moreover, while Dr. Brown's treatment notes occasionally reflect improvements in Plaintiff's condition, (*see* A.R. 489-90, 492, 494), upon close review, it appears that the notes actually indicate "[c]ycles of improvement and debilitating symptoms" that are not inconsistent with Dr. Brown's assessment. *See Garrison*, 759 F.3d at 1017 ("Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms."); *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (statements in treatment notes "must be read in context of the overall diagnostic picture [physician] draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) ("The primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations. We therefore do not require that a medical condition be

13

mentioned in every report to conclude that a physician's opinion is supported by the record."). Dr. Brown's treatment notes reflect consistent complaints of depression with significant symptoms that do not appear to improve over time.

Moreover, as discussed below, Dr. Brown's notes and opinion are further supported by the opinions of Drs. Yu and AAmes, who each opined that Plaintiff could not work a typical eight-hour day or forty-hour workweek. Therefore, upon review of the record, the court finds that the ALJ erred with respect to rejecting Dr. Brown's opinion. *See Holohan*, 246 F.3d at 1205 (finding error where ALJ rejected treating physician's opinion based on purported inconsistency with treatment notes because "when read in full and in context," notes were consistent with opinion). On remand, the ALJ must properly consider and incorporate Dr. Brown's opinion or provide specific and legitimate reasons for rejecting it.

### ii.  Dr. Yu

The ALJ accorded no weight to Dr. Yu's September 2010 opinion that Plaintiff could work no more than two hours per day with breaks in between.[1] The only reason she offered to reject his opinion was that "his underlying treatment notes do not support his opinion," citing seven individual notes and stating that they indicate that Dr. Yu has "described [Plaintiff's] HIV positive condition as well-controlled and [Plaintiff] reported feeling physically OK and well, when compliant with medications." (A.R. 18.)

The court finds that the ALJ erred in rejecting Dr. Yu's opinion. Dr. Yu's opinion about Plaintiff's ability to work was based upon his assessment of Plaintiff's *depression*. When asked to provide a description of Plaintiff's functional level, Dr. Yu stated "[he] still has uncontrolled depression and still needs to have meds adjusted. Can work no more than 2 hours/day with breaks in between." (A.R. 356.) Later in the opinion, in response to the question "[p]lease describe the objective findings which support the limitations indicated above," Dr. Yu described mental

---

[1] Dr. Yu also offered opinions about limitations in Plaintiff's ability to lift, carry, stand, walk, and sit. (A.R. 356.) Plaintiff does not challenge the ALJ's rejection of this portion of Dr. Yu's opinion.

14

functional limitations, writing "[l]imited ability in social interaction, adaption [sic], sustained concentration, and persistence." (A.R. 357.) However, each of the treatment notes cited by the ALJ as inconsistent with his opinion contains statements regarding Plaintiff's *physical* condition in relation to his HIV status. (*See* A.R. 302, 306, 320, 323, 326, 420, 463.) Moreover, the notes do not contradict Dr. Yu's assessment of Plaintiff's mental limitations; instead, they evidence Plaintiff's fairly consistent complaints of depression and its resulting symptoms. Dr. Yu documented Plaintiff's depression throughout the course of their treatment relationship. His notes include the following statements: "three weeks ago was having a very bad time—got really depressed; stayed in bed for a week; ate very little for a week; very irritable" (A.R. 306); "had an episode that he stayed in bed for three weeks 2/2 depression about two months ago; his depression is a bit better; still suffering lack of motivation and energy" (A.R. 318); "emotionally not felt well this past weekend; slept all day because of depression this past weekend—three day episode" (A.R. 330); "About the same in terms of depression; still depressed" (A.R. 451); "still depressed; slept the whole day on NY day" (A.R. 468).

Additionally, Dr. Yu's opinion about the effect of Plaintiff's psychological limitations on his ability to work is supported by other evidence in the record, including Dr. Brown's opinion that Plaintiff's symptoms "have prevented him from having the motivation and ability to work." It is also supported by Dr. AAmes's opinion that Plaintiff could not work a typical eight-hour day or forty-hour workweek due to his "severe psychiatric symptoms," as well as non-examining consulting physician Dr. Jacobs's assessment that Plaintiff was moderately limited in several areas, including his ability to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically-based symptoms. When viewed in their entirety, Dr. Yu's treatment notes do not undermine his opinion that Plaintiff could not work for more than two hours per day. *See Lester*, 81 F.3d at 833 ("the treating physician's opinion as to the combined impact of the claimant's limitations—both physical and mental—is entitled to special weight."). Therefore, the ALJ did not provide specific and legitimate reasons supported by substantial evidence to reject his opinion. On remand, the

15

ALJ must properly consider and incorporate Dr. Yu's opinion or provide the requisite reasons for rejecting it.

### iii.     Dr. AAmes

Finally, the ALJ rejected the opinion of examining physician Dr. AAmes on the grounds that it was not consistent with Dr. Brown's treatment notes. Specifically, the ALJ noted that Dr. AAmes performed his evaluation on March 8, 2012 and opined that Plaintiff had a Global Assessment of Function (GAF) score of 35[2] and diagnosed Plaintiff with schizoaffective disorder, which had not been diagnosed by Dr. Brown, and that just two months earlier, Dr. Brown had described Plaintiff as stable. Dr. Brown had also noted that he had no concerns with medication, reported good compliance with the treatment plan, stated Plaintiff was not at an imminent risk of harm to himself or others, was not gravely disabled, and assessed a GAF score of 51-60, which the ALJ found indicated "moderate symptoms." (A.R. 19 (citing A.R. 497-98).)

Again, the court finds that the ALJ did not provide specific and legitimate reasons supported by substantial evidence to reject Dr. AAmes's opinion. First, while the January 17, 2012 treatment notes specifically cited by the ALJ as inconsistent with Dr. AAmes's opinion describe Plaintiff as stable and not gravely disabled, they also contain Dr. Brown's observations that Plaintiff reported that it had been more difficult to motivate himself to leave his apartment and that he was feeling paranoid about "seeing a white car in his neighborhood." (A.R. 497-98.) He also noted that there had been no significant changes in Plaintiff's mental status. Further, as discussed above, Dr. Brown's treatment notes indicate that Plaintiff's symptoms "wax[ed] and

---

[2] **Error! Main Document Only.**The Ninth Circuit recently noted that GAF scores, which are "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment," "may be a useful measurement." *Garrison*, 759 F.3d at 1002 n.4 (quoting *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998) (quotation marks omitted)). According to the DSM-IV, a GAF score between 31 and 40 describes "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." A GAF score between 41 and 50 "describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning." *Garrison*, 759 F.3d at 1002 n.4. A GAF score between 51 to 60 "describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning.'" *Id*. (internal citations omitted).

wane[d] in the course of treatment," and the Ninth Circuit has cautioned that in such circumstances, "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017; *see also Holohan*, 246 F.3d at 1205 (statements in treatment notes "must be read in context of the overall diagnostic picture [physician] draws."). His treatment notes are not inconsistent with the results of Dr. AAmes's assessment. Additionally, Dr. AAmes administered nine psychological tests during his evaluation. This testing reasonably could have revealed additional functional impairments and diagnoses, such as schizoaffective disorder, and importantly, there is nothing in Dr. Brown's opinion, treatment notes, or the record as a whole that rules out Dr. AAmes's determination. *See, e.g., Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (finding error to reject examining physician's report on the grounds that it contradicted less extensive report). Dr. AAmes's opinion was consistent with the opinions of Drs. Brown and Yu, as discussed above, and thus supported by substantial evidence. The ALJ erred in rejecting his opinion. On remand, the ALJ must properly consider and incorporate Dr. AAmes's opinion or provide adequate reasons for rejecting it.

### b. Medical Opinion Regarding Plaintiff's Physical Functioning

Plaintiff also argues that the ALJ erred in giving great weight to the opinion of examining physician Dr. Lewis, who opined that Plaintiff had no limitations on standing, walking, or sitting, and could lift and carry 50 pounds occasionally and 25 pounds frequently. She also opined that he had a mild limitation on working around chemicals, dust, fumes, and gases due to his asthma. (A.R. 361.) She did not assess Plaintiff's mental limitations.

The ALJ found that Dr. Lewis's opinion was entitled to great weight because she performed an in-person examination, reviewed Plaintiff's medical records, and rendered an opinion consistent with the preponderance of the medical evidence of record. (A.R. 18.) Plaintiff argues that the ALJ's justification is not supported by substantial evidence, but does not identify any evidence or medical opinions in the record that undermines or contradicts Lewis's opinion, nor does he raise Dr. Lewis's opinion in his reply brief. Accordingly, the court finds that there

was no error in giving Dr. Lewis's opinion great weight.

**B.      The ALJ's Determination that Plaintiff's Impairments Met or Equaled a Listing**

Plaintiff next argues that the ALJ erred in making a boilerplate finding that Plaintiff does not meet listing 14.08. In her opinion, the ALJ stated, "I have considered all of the listed impairments, including sections 12.04, 12.06 and 14.08. However, the medical evidence fails to support a finding that the claimant's medically determined impairments are attended by clinical findings that meet or equal in severity the criteria of any listed impairment." (A.R. 15.) The ALJ then discussed the criteria of listings 12.04 and 12.06, but made no further mention of listing 14.08 in her decision.

At the third step of the sequential evaluation process, the ALJ considers the medical severity of the claimant's impairment(s). If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 and meets the duration requirement, the ALJ will find that the claimant is disabled. 20 C.F.R. § 404.1520(d). The claimant bears the burden of proving that an impairment or combination of impairments meets or equals the criterial of a listing. *Tackett*, 180 F.3d at 1100. "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Generally, a "[a] boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not" meet or equal a listing, *id.*; *see also, e.g., Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (noting that ALJ's unexplained finding at step three was reversible error), unless the ALJ's discussion of the relevant medical evidence adequately supports the conclusion. *Lewis*, 236 F.3d at 513.

Plaintiff argues that he raised listing 14.08(K) in his pre-hearing brief, (A.R. 253-56), but the ALJ provided no analysis to justify her decision that Plaintiff did not meet that listing. Listing 14.08(K) states:

> 14.08 Human immunodeficiency virus (HIV) infection. With documentation as described in 14.00F and one of the following:
>
> K. Repeated (as defined in 14.00I3) manifestations of HIV infection, including those listed in 14.08A–J, but without the requisite findings for those listings (for example, carcinoma of the cervix not meeting

18

> the criteria in 14.08E, diarrhea not meeting the criteria in 14.08I), or other manifestations (for example, oral hairy leukoplakia, myositis, pancreatitis, hepatitis, peripheral neuropathy, glucose intolerance, muscle weakness, cognitive or other mental limitation) resulting in significant, documented symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. Plaintiff argues that the record contains medical evidence from multiple sources that shows that Plaintiff meets listing 14.08(K), citing records he claims thoroughly documents fatigue due to his HIV. (*See* A.R. 276, 323, 352, 354, 356, 418.) However, most of the records cited connect Plaintiff's fatigue to his depression, not to HIV. (*See, e.g.*, 323 ("emotionally still feeling tired and depression; sleeping on and off"), 356 (Dr. Yu noting Plaintiff appears visibly fatigued due to depression), 418 (Dr. Brown noting Plaintiff's symptoms of depression include feeling tired), 276 (discussing reports of tiredness in context of depression).) The remaining records are vague as to the potential cause of Plaintiff's fatigue. (*See* A.R. 352 (Plaintiff noting he takes three naps a day), 354 (Plaintiff noting he "wasn't able to go to work some days due to fatigue").)

Further, while Plaintiff argues that he has a marked impairment in his abilities to complete activities of daily living and social functioning, the ALJ specifically found that he was only mildly restricted in activities of daily living and moderately limited in social functioning. (A.R. 15.) None of the medical opinions in the record conclude that Plaintiff was markedly limited in activities of daily living, and only Dr. AAmes concluded that Plaintiff was "severely limited" with respect to social functioning. (A.R. 513.) This conclusion was not supported by the other evidence in the record, with Dr. Yu determining that Plaintiff had "limited ability in social interaction" and Dr. Brown expressing only the opinion that Plaintiff was "social[ly] isolated from important relationships." (A.R. 357, 418.) Plaintiff relies on his own testimony to support his claim of marked limitations, but the ALJ found his testimony not fully credible and Plaintiff does

19

not challenge this conclusion. (*See* A.R. 20.) Therefore, the court finds that the ALJ's discussion of the relevant medical evidence adequately supported the conclusion that Plaintiff did not meet listing 14.08(K) and finds no error. *See Lewis*, 236 F.3d at 513.

### C. The ALJ's Formulation of Plaintiff's RFC

Finally, Plaintiff argues that the ALJ's determination of Plaintiff's RFC was not based on substantial evidence. The court agrees. Given the ALJ's failure to properly consider the medical evidence as discussed above, the RFC cannot be said to be based on substantial evidence as it may be incomplete to the extent it does not reflect in whole or in part the medical opinion evidence of record with respect to Plaintiff's mental limitations.

### D. Remand is Appropriate

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id*. at 1179-81. Here, the court finds that remand is the appropriate remedy to allow the ALJ the opportunity to remedy the errors discussed above.

## VII. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and denied in part. Defendant's motion is granted in part and denied in part. This case is remanded for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: March 25, 2015

_____
Donna M. Ryu
United States Magistrate Judge



20